*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CERULEAN SKY, LLC,

UNPUBLISHED
July 13, 2026
1:40 PM

Plaintiff-Appellant,

v

No. 376206
Washtenaw Circuit Court
LC No. 24-000331-CB

DAVID MERKEL,

Defendant-Appellee.

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Plaintiff, Cerulean Sky, LLC, appeals by right the trial court's order granting defendant, David Merkel, summary disposition and imposing sanctions in the amount of defendant's reasonable attorney fees against plaintiff and its agent, Arthur Talbot. Plaintiff contends that genuine issues of material fact preclude summary disposition, and that the trial court erred in granting defendant's request for sanctions against plaintiff and Talbot. For the reasons stated in this opinion, we disagree and accordingly affirm.

## I. BACKGROUND AND FACTS

Plaintiff is a member-managed LLC engaged in business development services, the members of which are Talbot, his wife, and his adult son, and the only agent of which is Talbot. In March 2024, plaintiff filed a complaint, signed by Talbot, alleging that Talbot had, beginning in December 2022, assisted defendant in negotiating the settlement of his family estate, and that plaintiff was owed 10%, plus interest and costs, of the more than $1.6 million defendant received from the settlement of his family estate in August 2023. Attached to plaintiff's complaint as "Exhibit A" was a document titled as an "agreement" between plaintiff, deemed "the Estate Asset Recovery Coordinator," and defendant. Under the terms enunciated in this document, plaintiff was to assist defendant in recovering his anticipated estate inheritance in exchange for granting plaintiff a 10% interest in recovered assets, a $50,000 initial service retainer fee, and an hourly fee for work plaintiff performed. The document stated that it was prepared for defendant on April 20, 2023 and "[a]greed [to] this day May 22, 2023" by Talbot and defendant. Both Talbot's and defendant's signatures were present on the document.

In answering plaintiff's complaint, defendant denied that the parties entered into an agreement and asserted that "[p]laintiff's claims are barred because the purported 'agreement' appended to [p]laintiff's [c]omplaint as 'Exhibit A' is the product of forgery." Defendant more specifically asserted that his signature had been forged on the agreement.

The parties proceeded to discovery, and in July 2024, plaintiff made a series of relevant statements in its responses to defendant's requests for admission, interrogatories, and requests for production. In responding to defendant's requests for admission, plaintiff admitted that it was its position that defendant signed, in person, the purported agreement, which had been defined as that document attached as "Exhibit A" to plaintiff's complaint. Plaintiff further explained that the agreement was executed at defendant's kitchen table, and that plaintiff, through Talbot, had provided defendant "[t]wo true copies of the printed agreement . . . for signing" but that "[d]efendant insisted that, instead, only one original be signed which he wanted to keep for himself." Plaintiff also stated that defendant had instructed Talbot "to 'quickly make copies of the agreement and other documents and come back' to [d]efendant." In addition, plaintiff averred that "[n]either of the parties electronically signed the agreement" and admitted that it never received from defendant the $50,000 initial service retainer set forth in the purported agreement. In its responses to defendant's requests for production, plaintiff stated that it "only has a paper copy made of the original and does not possess a" digital file of the ink-on-paper contract "except when this paper copy was scanned for an exhibit to the [c]omplaint." Plaintiff further attested in its responses to defendant's interrogatories that the agreement was signed in person, not electronically, and that "[d]efendant requested return of the original ink-on-paper agreement and [p]laintiff was only permitted to have a copy." Talbot signed plaintiff's discovery responses.

Discovery proceeded with defendant taking Talbot's deposition in September 2024. Regarding the purported agreement, although expressing some uncertainty as to the dates on which it was provided to defendant and signed by the parties, Talbot testified that he observed defendant sign the agreement by hand at defendant's kitchen table. When asked whether he followed defendant's instruction, referenced in plaintiff's discovery responses, to make copies of the purported agreement and return it to defendant, Talbot answered: "Mostly. . . . I don't know if I came back immediately with it or the next day. A lot of times [defendant] insisted I come back immediately, so it's possible I came back immediately after making the copies at the office." Talbot further affirmed that he "made copies of the original contract signed by [defendant] at [plaintiff's attorney's] office" and that he provided defendant the original signed version of the agreement "after giving him a copy of the documents[.]" Talbot also acknowledged that he had access to a "consent agreement" pertaining to defendant's family's estate, dated March 16, 2023 that defendant had electronically signed.

In October 2024, defendant supplemented his initial disclosures to disclose and produce the results of a handwriting examination conducted by KDX Forensic Consulting. The conclusion of that examination was that defendant did not write "the questioned *David Merkel* signature appearing on the questioned Estate Recovery Agreement . . . and that the signature is the product of a cut-and-paste manipulation utilizing the electronic signature that is found on the Consent Agreement/Revised Proposed Settlement Agreement, dated March 16, 2023" that was termed "Item K1A." The report further noted: "As no individual is capable of writing a sufficiently complex body of writing, such as a signature, exactly the same way twice, the evidence further

directly refutes [p]laintiff's assertion that the Estate Recovery Agreement was signed in person as an original-ink-on-paper agreement."

On November 4, 2024, the discovery deadline, defendant moved for summary disposition under MCR 2.116(C)(10), contending that there was no valid contract between the parties. Defendant also argued that sanctions should be imposed against plaintiff and Talbot in the amount of defendant's reasonable attorney fees and costs under MCL 600.2591 and MCR 1.109(E)(6). Plaintiff requested an adjournment of the hearing on defendant's motion to allow a handwriting expert retained by plaintiff to render his opinion. Pursuant to the parties' stipulation, the trial court then adjourned the discovery deadline to November 22, 2024, as well as the hearing on defendant's motion.

On December 17, 2024, plaintiff filed a response to defendant's motion for summary disposition arguing that summary disposition and defendant's request for sanctions should be denied. Attached to plaintiff's response was an affidavit of its expert, a handwriting analyst, who "agree[d] with the KDX analysis that the signature appearing on the Estate Recovery Agreement . . . is a direct cut-and-paste transference from the signature found on Item K1A (or another item containing the same signature)." Plaintiff's expert further stated that "[s]ince there is no original document that would contain this signature, it cannot be determined who created the cut and paste based on the evidence provided." Also attached to plaintiff's response was an affidavit executed by Talbot. According to the affidavit, Talbot "believe[d]" that he had "witnessed [defendant] signing at least one copy of the [a]greement" at defendant's home, that when he left defendant's home, he had "presumed the signed [a]greement was in the stack of files provided to [Talbot] that [they had] just [been] reviewing," but it was "later discovered [that] the signed agreement was not included in documents" defendant provided to Talbot that night, and that one week later, defendant provided Talbot a copy of the signed agreement.

On December 20, 2024, the trial court held a hearing on defendant's motion for summary disposition and request for sanctions. As the dispute was proceeding to a bench trial and the presiding judge was retiring imminently, the trial court opted to deny the motion without prejudice. Defendant thereafter moved again for summary disposition in April 2025, advancing the same arguments as in his prior summary disposition motion, including the request for sanctions in the amount of reasonable attorney fees and costs. Plaintiff again requested that the trial court deny defendant's motion for summary disposition and request for sanctions.

In June 2025, the trial court held a hearing on defendant's second motion for summary disposition, presided over by a different trial court judge. The trial court granted defendant's motion, reasoning that there was "no reasonable jury or finder of fact who would hear th[e] evidence and conclude that in fact [defendant] put his hand to paper and signed this contract." In doing so, the trial court highlighted plaintiff's expert's attestation that defendant's signature "was placed [on the agreement] in some manner other than by [defendant] signing his name" and found that there was no evidence to support plaintiff's assertion that "the contract was signed at the [d]efendant's kitchen table with both of them present and that [Talbot] watched [defendant] put pen to paper and sign the contract." As to defendant's request for sanctions, plaintiff's counsel argued that sanctions were inappropriate because "[i]t was only after [defendant] employed an expert that" defendant began arguing that the case was frivolous and stated that he did not believe the case "was in attempt to extort anything from" defendant. The trial court found that that

argument "only [went] so far," stating, "your client knew that he did not have a valid signature on a contract that he was trying to enforce and continued on to pursue the case after being exposed that this was not a valid contract." The trial court accordingly entered an order granting defendant's motion for summary disposition and imposing sanctions under MCL 600.2591 and MCR 1.109(E) in the amount of defendant's reasonable attorney fees against plaintiff and Talbot.[1]

Plaintiff now appeals.

## II. ANALYSIS

### A. SUMMARY DISPOSITION

Plaintiff first contends that the trial court erred by granting defendant's motion for summary disposition. We disagree.

We review a trial court's decision on a motion for summary disposition de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim." *Dorman v Twp of Clinton*, 269 Mich App 638, 644; 714 NW2d 350 (2006). "The court must consider all evidence submitted by the parties in the light most favorable to the party opposing summary disposition." *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). "Summary disposition is appropriate when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021) (quotation marks and citation omitted). "This Court also reviews de novo the interpretation and application of statutes and court rules." *Infinity Physical Therapy, LLC v Meemic Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 365767); slip op at 2.

Plaintiff seeks to recover damages that it alleges arose from the breach of a contract it made with defendant. As the party seeking to enforce the agreement, plaintiff bears the burden of proving that a valid contract exists. See *AFT Mich v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). And although we consider the evidence in the light most favorable to plaintiff as the party opposing the motion for summary disposition, see *McMaster*, 509 Mich at 431, we "will not lightly presume the existence of an enforceable contract because, 'regardless of the equities in a case, the courts cannot make a contract for the parties when none exists[,]' " *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014), quoting *Hammel v Foor*, 359 Mich 392, 400; 102 NW2d 196 (1960).

Plaintiff's account of the facts as stated in its responses to defendant's requests for admission, interrogatories, and requests for production, as well as in Talbot's deposition, was the following: Talbot provided defendant two unsigned copies of the alleged agreement and Talbot observed defendant sign one of these copies in person at defendant's kitchen table. After the agreement was signed, Talbot took the signed agreement to plaintiff's attorney's office, made copies, and either immediately or the following day returned the original signed agreement to

---

[1] The trial court's order allowed defendant to submit a supplemental brief regarding the amount of the sanctions to be awarded. That issue is not before us in this appeal.

defendant. Plaintiff retained a paper copy Talbot made of the original and it was a scan of this copy that was attached as "Exhibit A" to plaintiff's complaint. After both parties' experts concluded that defendant's signature on the alleged agreement was not made by hand, but rather was a cut-and-paste transference of defendant's signature that was affixed to another document that Talbot admitted to having access to, and following the close of discovery and the filing of defendant's first motion for summary disposition, Talbot executed an affidavit describing an alternative account of events. In his affidavit, Talbot attested that although he still "believe[d]" that he "witnessed [defendant] signing at least one copy of the agreement," when he left defendant's home after the alleged signing of the agreement, "the signed [a]greement was not included in documents" defendant provided Talbot that evening, and, one week later, defendant provided Talbot a copy of the signed agreement.

It is on the basis of the new account of events provided in Talbot's affidavit that plaintiff now asserts that the copy of the agreement attached to its complaint was the copy that Talbot received from defendant one week after the signing. And correspondingly, plaintiff asks that we conclude there to be a genuine issue of material fact given "the possibility," again relying on Talbot's affidavit, "that [defendant] or another individual under his control could have" affixed defendant's signature via "cut-and-paste manipulation."

We cannot do so on the record before us. MCR 2.302(E)(1)(a)(*i*) requires a party "that has responded to an interrogatory, request for production, or request for admission" to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" When a party fails to disclose or supplement its response in accordance with MCR 2.302(E), our court rules prohibit that party from "us[ing] that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." MCR 2.313(C)(1). Adjacently, "a party or witness may not manufacture a question of material fact" to survive a motion for summary disposition "by directly contradicting the person's own deposition testimony with an affidavit." *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76-78; 998 NW2d 743 (2022). See also *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001) ("[P]arties may not contrive factual issues merely by asserting the contrary in an affidavit after having given damaging testimony in a deposition.") (quotation marks and citation omitted).

Applying these rules, we cannot accept, for summary-disposition purposes, plaintiff's assertion that the copy of the purported agreement attached to its complaint was the copy allegedly provided to Talbot by defendant one week after the agreement was signed. Not only is this assertion unsupported by record evidence (given that Talbot never explicitly states in his affidavit that the copy he attached to plaintiff's complaint was that allegedly provided to him by defendant a week after the signing), but this account also directly conflicts with plaintiff's account throughout discovery that the copy of the agreement attached to the complaint was the copy that Talbot made himself soon after the signing of the agreement and retained thereafter. To the extent Talbot's affidavit persuaded plaintiff that its discovery responses were incorrect, plaintiff was required to correct its responses "in a timely manner." MCR 2.302(E)(1)(a)(*i*). Plaintiff never sought to amend its responses, and rather only altered its account of the facts via Talbot's affidavit, which was submitted after discovery closed and attached to its response to defendant's motion for

summary disposition. Accordingly, plaintiff was prohibited from relying on Talbot's affidavit to the extent it conflicted with plaintiff's discovery responses in defending against defendant's motion for summary disposition.[2] See MCR 2.313(C)(1). And correspondingly, plaintiff was prohibited from relying on Talbot's affidavit to contrive an issue of material fact by directly contradicting Talbot's deposition testimony. See *Bakeman*, 344 Mich App at 76-77; *Dykes*, 246 Mich App at 479-482.

As a result, this Court is restricted to a record on appeal that establishes that the copy of the alleged contract attached to plaintiff's complaint was not agreed to by the parties. For indeed, plaintiff no longer disputes that defendant's signature on that copy "is a cut-and-paste manipulation." Plaintiff highlights Talbot's consistent testimony that defendant signed an agreement and that plaintiff took actions pursuant to the purported agreement. But even considering this evidence, without any valid copy of the alleged agreement plaintiff seeks to enforce, we are left without evidence of what terms plaintiff supposedly performed under, which is especially puzzling given plaintiff's allegation in its complaint that it had assisted defendant in resolving the settlement of his family estate beginning in December 2022, five months before any alleged agreement was made.[3]

Thus, with the record devoid of any valid copy of the alleged agreement plaintiff seeks to enforce or sufficient other evidence supporting the existence of an agreement between the parties, and even considering the evidence in the light most favorable to plaintiff, see *McMaster*, 509 Mich at 431, we conclude that plaintiff is unable to demonstrate that it can prove the existence of a valid contract, see *AFT Mich*, 497 Mich at 235.[4] Accordingly, there is no genuine issue of material fact, and the trial court therefore did not err by granting summary disposition to defendant. See *Payne*, 338 Mich App at 274.

## B. SANCTIONS

Plaintiff next contends that the trial court erred by imposing sanctions against itself and Talbot in the amount of defendant's reasonable attorney fees. Again, we disagree.

---

[2] Plaintiff makes no argument that its failure to correct its discovery responses "was substantially justified or harmless." MCR 2.313(C)(1).

[3] It is also notable that although plaintiff asserted throughout discovery that defendant had the original signed agreement in its possession, plaintiff never sought this document through discovery, and defendant stated in his initial discovery disclosures that it did not have the "[o]riginal signed version of 'Exhibit A' appended to [p]laintiff's [c]omplaint" in his possession.

[4] See also *Citifinancial Mtg Co, LLC v Comerica Bank*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2006 (Docket No. 270453), p 3-4 (affirming a grant of summary disposition when the plaintiff failed "to produce evidence that the signature on the document it relied on was authentic"). "Unpublished opinions of this Court are not binding, but may be considered for their persuasive value." *In re Walters*, ___ Mich App ___, ___ n 5; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 6 n 5.

We review for an abuse of discretion a trial court's decision to impose sanctions, *Casey v Auto Owners Ins Co*, 273 Mich App 388, 404; 729 NW2d 277 (2006), including an award of attorney fees and costs, *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 145; 946 NW2d 812 (2019). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). And we review for clear error "a trial court's factual findings underlying its fee award, including a finding that a claim or a defense was frivolous." *Id.* We will deem a finding "clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id.* at 145-146 (quotation marks and citation omitted).

The trial court imposed sanctions against plaintiff and Talbot pursuant to MCL 600.2591 and MCR 1.109(E). MCL 600.2591(1) provides that when "a court finds that a civil action or defense to a civil action was frivolous," the trial court must "award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." See also *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 268; 548 NW2d 698 (1996) (explaining that sanctions are mandatory under MCL 600.2591(1)). Such an award must include reasonable attorney fees. MCL 600.2591(2). And for purposes of MCL 600.2591, "[a] court may find that a party's action is frivolous if (1) the party initiated the suit for purposes of harassment, (2) '[t]he party's legal position was devoid of arguable legal merit,' or (3) '[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.' " *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015), quoting MCL 600.2591(3)(a). The purpose of assessing sanctions for the assertion of "frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc, v Van Sickle*, 266 Mich App 400, 437; 700 NW2d 432 (2005) (quotation marks and citation omitted).

MCR 1.109(E)(5) provides:

*Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

When a document is signed in violation of MCR 1.109(E)(5), MCR 1.109(E)(6) requires a trial court to "impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney

fees." MCR 1.109(E)(6). MCR 1.109(E)(7) further subjects a party pleading a frivolous claim to costs.

The trial court assessed sanctions against plaintiff and Talbot under MCL 600.2591 and MCR 1.109(E) on the grounds that plaintiff and Talbot specifically "knew that [they] did not have a valid signature on a contract that [they] w[ere] trying to enforce and continued on to pursue the case after being exposed that this was not a valid contract." This finding was not clearly erroneous, *Pioneer State Mut Ins Co*, 330 Mich App at 145-146, and supports the trial court's decision to award sanctions under both MCL 600.2591 and MCR 1.109(E). Under MCL 600.2591, sanctions were justified against plaintiff on grounds that plaintiff "had no reasonable basis to believe that the facts underlying [its] legal position were in fact true," MCL 600.2591(3)(a)(*ii*), and on grounds that its "legal position was devoid of arguable legal merit," MCL 600.2591(3)(a)(*iii*). Similarly, under MCR 1.109(E)(6), because Talbot signed and filed plaintiff's complaint, sanctions were justified against Talbot, plaintiff, or both on grounds that the assertions in that document were not "well grounded in fact" and that the claims asserted were not "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," MCR 1.109(E)(5)(b).

Plaintiff argues that it reasonably believed that the facts underlying its legal position were true and that its position had arguable legal merit. But we review the trial court's finding that plaintiff's claim was frivolous for clear error, and we are not firmly convinced that a mistake has been made. See *Pioneer State Mut Ins Co*, 330 Mich App at 145-146. In light of the record evidence, it was not clear error for the trial court to find that plaintiff and Talbot had no reasonable basis to believe that the document they attached to plaintiff's complaint—which they represented to be the contract between the parties forming the basis for plaintiff's legal claim—was not signed at defendant's kitchen table in Talbot's presence as plaintiff and Talbot had asserted in the complaint and throughout discovery. Nor was it clear error for the trial court to find that this rendered plaintiff's complaint devoid of arguable legal merit. And certainly by the time that both parties' experts averred that defendant's signature on the purported agreement was a cut-and-paste transference of defendant's signature from another document (to which Talbot acknowledged that he had access), plaintiff was well aware that the contract it was attempting to enforce as attached to its complaint was not valid. Nonetheless, rather than attempting to attain through discovery the alleged original copy of the agreement that plaintiff asserted existed, to amend its complaint to reflect that the contract it relied upon was invalid, or, as required by MCR 2.302(E)(1)(a)(*i*), to correct its discovery responses to the extent those responses were inaccurate and contradicted by Talbot's affidavit, plaintiff continued to pursue damages on the basis of the invalid contract attached to its complaint. By continuing to assert such claims, plaintiff needlessly increased the costs required of defendant to shield against liability for an invalid contract. See *John J Fannon Co v Fannon Prod, LLC*, 269 Mich App 162, 168-170; 712 NW2d 731 (2005) (affirming an award of sanctions when, by the time the appealing plaintiff's attorney began representing the plaintiff, "ample evidence existed that directly contradicted the allegations in [the] plaintiff's complaint[,]" and yet the plaintiff's attorney continued filing "pleadings in the trial court with additional factually baseless claims"); *BJ's & Sons Constr Co, Inc*, 266 Mich App at 407-408 (affirming an award of sanctions and a finding of frivolousness when the plaintiffs "subjected [the] defendants to years of litigation and caused them to incur substantial attorney fees despite knowing that plaintiffs had no interest in the [disputed] property").

Plaintiff also argues that the trial court erred by imposing sanctions against Talbot personally, as only Cerulean Sky, LLC was formally a party in the case. But, as stated, MCR 1.109(E)(5) and (6) apply to "[t]he signature of a *person* filing a document, whether or not represented by an attorney." (Emphasis added). Talbot is plaintiff's sole agent, and he signed and filed plaintiff's complaint. Although, as plaintiff argues, Talbot did not personally sign and file plaintiff's response to defendant's motion for summary disposition, the trial court necessarily found that plaintiff's complaint—with the alleged contract at issue attached—was frivolous. Talbot represented to the court that he watched defendant sign that contract in his presence, yet both parties' experts agreed that was impossible and plaintiff no longer defends that position. Consequently, on the record presented, it was not clear error for the trial court to find that Talbot did not have "knowledge, information, and belief formed after a reasonable inquiry" that the complaint was "well grounded in fact." MCR 1.109(E)(5)(b).

We therefore conclude that the trial court's imposition of sanctions in the amount of defendant's reasonable attorney fees under MCL 600.2591 and MCR 1.109(E) was not "a decision . . . outside the range of reasonable and principled outcomes," and therefore not an abuse of discretion. *Pioneer State Mut Ins Co*, 330 Mich App at 145.

## III. CONCLUSION

For the reasons stated, the trial court did not err by granting defendant's motion for summary disposition and did not abuse its discretion by imposing sanctions against plaintiff and Talbot in the amount of defendant's reasonable attorney fees. The judgment of the trial court is therefore affirmed.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin

-9-